UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIE CROWE MOORE,

    Plaintiff,

v.

UNKNOWN MIRELES et al.,

    Defendants.

_____/

Case No. 1:23-cv-885

Honorable Ray Kent

## **OPINION**

  This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). In a prior Order, the Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

  This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

  "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Mireles and Unknown Parties. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity § 1983 claims for damages against remaining Defendants Ward and Crarter. Plaintiff's First Amendment individual capacity retaliation claims and his official capacity ADA claims against Defendants Ward and Crater will remain in the case.

## Discussion

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan.[2] The

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=238476 (last visited July 29, 2024).

3

events about which Plaintiff complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Sergeant Unknown Mireles, Corrections Officers Unknown Ward and Unknown Crater, and Unknown Parties, named as "currently unknown person(s)," in their individual and official capacities. (ECF No. 1, PageID.1, 2.)

Plaintiff alleges that he is hearing impaired and that in 2015, prisoners within the MDOC initiated a class action lawsuit challenging prison officials' failure to provide reasonable accommodations to deaf and hard of hearing prisoners.[3] (*Id.*, PageID.2.) Plaintiff states that the MDOC agreed to a settlement in February of 2020, but notwithstanding the settlement, many prison officials continue to resist providing reasonable accommodations to hard of hearing prisoners. (*Id.* at PageID.3.)

Plaintiff states that he was transferred to DRF in September of 2022, and was placed in level II housing. Plaintiff immediately informed housing unit staff, including Defendants Ward and Crater, that he was hard of hearing, used hearing aids, and required special accommodations, such as personal contact with Plaintiff in order to make him aware of facility announcements. (*Id.*)

Plaintiff asserts that Defendants Ward and Crater were required to provide such accommodations by the ADA and MDOC policy. (*Id.*, PageID.3–4.) Plaintiff states that Defendants Ward and Crater expressed irritation with this requirement and refused to comply. As a result, Plaintiff and other hard of hearing prisoners began to voice informal complaints, prompting DRF supervisors to push Defendants Ward and Crater to provide the necessary accommodations. Defendants Ward and Crater responded to this by harassing Plaintiff with increased cell and pat-down searches, and remarks such as telling Plaintiff that he should not have

---

[3] *McBride v. MDOC et al.*, 294 F. Supp. 3d 695 (E.D. Mich. 2018).

come to prison if he was deaf. Defendant Ward also told Plaintiff that he was sick and tired of that "deaf shit" and that Plaintiff had better find a way to start hearing. (*Id.*, PageID.4.)

Plaintiff contacted the *McBride* settlement monitor, Daniel Carvo, to complain about his treatment by Defendants Ward and Crater. (*Id.*) On December 17, 2022, Defendant Ward initiated a search of the cell that Plaintiff shared with another prisoner. (*Id.*, PageID.5.) Defendant Ward claimed that during the search he discovered three pop bottles and a fiber powder bottle containing a brown liquid, and a clear plastic bag containing a red pulpy liquid which smelled of fermented fruit. (*Id.*) Defendant Ward took the liquid to non-party Lieutenant Schmidt for verification, and Schmidt found that the liquid was prison-made alcohol, known as spud juice. (*Id.*) Plaintiff was subsequently charged with substance abuse. (*Id.*)

Pending his hearing, Plaintiff was allowed to remain in the general population, which appeared to anger Defendant Ward, who told Plaintiff to "watch himself." (*Id.*, PageID.5–6.) Plaintiff was found guilty of the misconduct following a hearing on January 12, 2023, despite Plaintiff's protestations that the ticket was false and retaliatory. (*Id.*, PageID.6.) Plaintiff was sentenced to 21 days' loss of privileges. (*Id.*)

Later that day, Defendants Ward and Crater began taunting Plaintiff that he did not get away and that they were going to get rid of his "stupid ass" so he could take that "deaf shit" elsewhere. (*Id.*) Plaintiff waved his hand in a gesture meaning that he was not paying attention. Shortly thereafter, Plaintiff was detained and taken to solitary confinement. (*Id.*) Plaintiff was subsequently told that Defendant Ward had written a misconduct on him for "creating a disturbance" and for "insolence," falsely stating that Plaintiff had called Defendant Ward a "Ho ass n***er" and not to send anyone to his assigned quarters. (*Id.*, PageID.6–7.) Plaintiff states that such charges are typically a class II misconduct, but that Defendant Mireles elevated them to a

5

class I violation, which resulted in Plaintiff being confined to solitary confinement pending the hearing. (*Id.*) Plaintiff claims that Defendant Mireles' only motivation for elevating the charge was that he wanted to assist Defendants Ward and Crater in retaliating against Plaintiff. (*Id.*)

When taking Plaintiff to solitary confinement, Defendant Crater improperly confiscated Plaintiff's hearing aids even though the *McBride* agreement and MDOC policy both allow Plaintiff to have his hearing aids in solitary. (*Id.*, PageID.8.) Plaintiff again contacted the *McBride* settlement monitor, who contacted prison officials and ordered that Plaintiff's hearing aids be returned to him. However, Plaintiff did not get his hearing aids back until after he was released from solitary confinement. (*Id.*)

On January 24, 2023, Plaintiff had a hearing before non-party Administrative Law Judge Hawkins, who found Plaintiff not guilty of creating a disturbance, but guilty of calling Defendant Ward a degrading name. (*Id.*) Plaintiff was released from solitary confinement but was sentenced to an additional 21 days' loss of privileges. (*Id.*, PageID.9.)

Plaintiff claims that Defendants retaliated against him in violation of the First Amendment, refused to provide him with reasonable accommodations under the ADA, and violated his Fourteenth Amendment right to due process. (*Id.*, PageID.9–13.) Plaintiff seeks monetary damages. (*Id.*, PageID.10, 11, 13, 14.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

6

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### 1. Official Capacity Claims

Plaintiff names Defendants in both their individual and official capacities. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune from

suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff only seeks monetary damages. An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and Plaintiff's official capacity claims under § 1983 against Defendants will be dismissed.

### 2. Retaliation Claims

Plaintiff asserts that Defendants Ward, Crater, and Mireles retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken

8

against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

Plaintiff's complaint is devoid of facts from which the Court could infer that Defendant Mireles was aware of Plaintiff's complaints against Defendants Ward and Crater and elevated the misconduct to a class I charge because of those complaints. Plaintiff's First Amendment individual capacity retaliation claim against Defendant Mireles, therefore, will be dismissed.

However, because Plaintiff alleges that Defendants Ward and Crater responded to his complaints by increasing cell searches and writing a false misconduct ticket on him, Plaintiff's retaliation claims against Defendants Ward and Crater may not be dismissed at screening.

### 3. Due Process Claims

Plaintiff claims that Defendant Mireles violated his Fourteenth Amendment due process rights when he improperly elevated a class II misconduct to a class I misconduct. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

10

Plaintiff's major misconduct charge potentially implicated a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000,[4] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff notes that he was placed in solitary confinement awaiting his hearing and remained there for 12 days, after which he was released. Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

---

[4] *See* OTIS, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=238476 (last visited July 29, 2024.)

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding).

Plaintiff's confinement in solitary confinement for 12 days pending a hearing is less than the 60-day period in *Joseph* that the Sixth Circuit held was *not* atypical and significant, and thus it did not trigger a right to due process.

The same is true for the 21 days' loss of privileges that Plaintiff received. If confinement in segregation does not implicate a protected liberty interest, it follows that the loss of privileges stemming from that confinement do not implicate such an interest. Furthermore, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.

1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's loss of privileges did not trigger a right to due process.

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

B. ADA Claims

Plaintiff claims that Defendants Ward and Crater violated his rights under the ADA. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). Discrimination against a "qualified individual on the basis of a disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case under the ADA for failure to accommodate a disability, the plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the service, with or without reasonable accommodation; (3) the

13

defendants knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the defendants failed to provide the necessary accommodation. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018).

At this stage in the litigation, Plaintiff's ADA claims against Defendants Ward and Crater in their official capacities are not subject to dismissal. However, Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Thus, the Court will dismiss Plaintiff's ADA claims against Defendants Ward and Crater in their individual capacities.

### C. Defendants Unknown Parties

With respect to Defendants Unknown Parties, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Here, Plaintiff fails to name Defendants Unknown Parties in the body of his complaint. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would

suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his claims against Defendants Unknown Parties will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Mireles and Unknown Parties will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity § 1983 claims for damages against remaining Defendants Ward and Crater. Plaintiff's First Amendment individual capacity retaliation claims and his official capacity ADA claims against Defendants Ward and Crater will remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 5, 2024                           /s/ Ray Kent
                                                  Ray Kent
                                                  United States Magistrate Judge