UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

WILLIE CROWE MOORE,

Plaintiff,

v.

UNKNOWN MIRELES et al.,

Defendants.

_______________________________/

Case No. 1:23-cv-885

Honorable Jane M. Beckering

**OPINION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Plaintiff Willie Crowe Moore, a prisoner in the custody of the Michigan Department of Corrections (MDOC). The events described in Plaintiff's complaint occurred at the MDOC's Carson City Correctional Facility (DRF). Plaintiff named three defendants and raised several claims; only one claim against one defendant remains. (*See* Op. & Order, ECF Nos. 12, 13; Order, ECF No. 35.)

Plaintiff claims that MDOC Corrections Officer Robert Ward wrote a misconduct report on January 12, 2023, charging Plaintiff with creating a disturbance and insolence. Plaintiff claims the misconduct report was false and that Defendant Ward wrote it to retaliate against Plaintiff because Plaintiff engaged in conduct protected by the First Amendment, specifically, Plaintiff complained to supervisors about Defendant Ward's refusal to follow established accommodations for Plaintiff's deafness.

This matter is now before the Court on Defendant Ward's motion for summary judgment. (ECF No. 44.) For the reasons set forth below, the Court will grant Defendant Ward's summary judgment motion and dismiss Plaintiff's complaint with prejudice.

## I. Factual Background[1]

Plaintiff states that he was transferred to DRF in September of 2022, and was placed in level II housing. Plaintiff immediately informed housing unit staff, including Defendant Ward, that he was hard of hearing, used hearing aids, and required special accommodations, such as personal contact with Plaintiff in order to make him aware of facility announcements.

Plaintiff asserts that Defendants Ward and Crater were required to provide such accommodations by the ADA and MDOC policy. Plaintiff states that Defendants Ward and Crater expressed irritation with this requirement and refused to comply. As a result, Plaintiff and other hard of hearing prisoners began to voice informal complaints, prompting DRF supervisors to push Defendants Ward and Crater to provide the necessary accommodations. Defendants Ward and Crater responded to this by harassing Plaintiff with increased cell and pat-down searches, and remarks such as telling Plaintiff that he should not have come to prison if he was deaf. Defendant Ward also told Plaintiff that he was sick and tired of that "deaf shit" and that Plaintiff had better find a way to start hearing.

On December 17, 2022, Defendant Ward initiated a search of the cell that Plaintiff shared with another prisoner. Defendant Ward claimed that during the search he discovered three pop bottles and a fiber powder bottle containing a brown liquid, and a clear plastic bag containing a red pulpy liquid which smelled of fermented fruit. Defendant Ward took the liquid to non-party Lieutenant Schmidt for verification, and Schmidt found that the liquid was prison-made alcohol, known as spud juice. Plaintiff was subsequently charged with substance abuse.

---

[1] The factual summary is derived from Plaintiff's complaint, which purports to be a sworn and verified statement. (ECF No. 1, PageID.14.)

Pending his hearing, Plaintiff was allowed to remain in the general population, which appeared to anger Defendant Ward, who told Plaintiff to watch himself. Plaintiff was found guilty of the misconduct following a hearing on January 12, 2023, despite Plaintiff's protestations that the ticket was false and retaliatory. Plaintiff was sentenced to 21 days' loss of privileges.

Later that day, Defendants Ward and Crater began taunting Plaintiff that he did not get away and that they were going to get rid of his "stupid ass" so he could take that "deaf shit" elsewhere. Plaintiff waved his hand in a gesture meaning that he was not paying attention. Shortly thereafter, Plaintiff was detained and taken to solitary confinement. Plaintiff was subsequently told that Defendant Ward had written a misconduct on him for "creating a disturbance" and for "insolence," falsely stating that Plaintiff had called Defendant Ward a "Ho ass n***er" and not to send anyone to his assigned quarters.

Plaintiff states that such charges are typically a class II misconduct, but that Defendant Mireles elevated them to a class I violation, which resulted in Plaintiff being confined to solitary confinement pending the hearing. Plaintiff claims that Defendant Mireles' only motivation for elevating the charge was that he wanted to assist Defendants Ward and Crater in retaliating against Plaintiff.

When taking Plaintiff to solitary confinement, Defendant Crater improperly confiscated Plaintiff's hearing aids. Plaintiff did not get his hearing aids back until after he was released from solitary confinement.

On January 24, 2023, Plaintiff had a hearing before non-party Administrative Law Judge (ALJ) Hawkins, who found Plaintiff not guilty of creating a disturbance, but guilty of insolence because he called Defendant Ward a degrading name. The hearing officer did not impose

segregation as a sanction for that offense. Accordingly, Plaintiff was released from segregation. ALJ Hawkins instead imposed a sanction of an additional 21 days' loss of privileges.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478–79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## III. First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To prevail on a First Amendment retaliation claim, Plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### A. Protected Conduct

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Plaintiff was transferred to DRF during September of 2022. (Compl., ECF No. 1, PageID.3.) Immediately upon Plaintiff's arrival, he informed staff, including Defendant Ward, that Plaintiff was hard of hearing and required special accommodations. (*Id.*) Plaintiff reports that Defendant Ward was irritated by the accommodations and refused to provide them. (*Id.*, PageID.4.) Defendant Ward's refusal prompted Plaintiff to complain to supervisors in October of 2022. (*Id.*) Plaintiff's complaints to supervisors regarding Defendant Ward ignoring the deafness accommodations are plainly protected conduct.

**B. Adverse Action**

Thereafter, Plaintiff contends that Defendant Ward started to harass Plaintiff. Plaintiff claims that the harassment peaked with the substance abuse misconduct ticket written by Defendant Ward on December 17, 2022.[2] (*Id.*, PageID.5.) Then, nearly a month passed before Defendant Ward wrote the January 12, 2023, insolence misconduct ticket—the only allegedly retaliatory act that remains at issue.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

[2]Retaliation claims relating to the misconduct are not before the Court because Plaintiff failed to exhaust his administrative remedies relating to any such claim. (R&R, ECF No. 33, PageID.216–217; Order, ECF No. 35.)

The Sixth Circuit has concluded that even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben*, 887 F.3d at 266–67 (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")). Certainly, the 21-day loss of privileges that followed the insolence misconduct could be considered adverse action.

**C. Adverse Action Motivated by Protected Conduct**

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) ("[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims") (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are

not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendant Ward's misconduct report was motivated by any of his protected conduct. He merely concludes that because he complained about Defendant Ward weeks before the report, the report must have been motivated by his complaints.

But, if it is temporal proximity that explains motivation, the motivating conduct here must have been Plaintiff's insolence. That is the conduct by Plaintiff that directly resulted in the misconduct report[3] and, apparently, the two events occurred one after the other.

Plaintiff offers an alternative "proof of motive" by claiming that the misconduct report is false. If, in fact, Plaintiff did not make the insolent statement, it would open the door to exploring whether prior conduct—like complaining to Defendant Ward's supervisors—motivated the report.

But Plaintiff's claim that he did not make the insolent statement is precluded by the ALJ's factual determination that Plaintiff made the statement. The Sixth Circuit has instructed courts to apply a four-factor test to determine when factfinding done by a state agency should be given preclusive effect. *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (citing *Univ. of*

---

[3] Plaintiff's insolence, of course, is not protected conduct. If Plaintiff called Defendant Ward a "ho ass n***er" the statement would fit within the definition of "insolence" under the MDOC Policy Directive governing prisoner misconduct. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). *See also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority).

*Tenn. v. Elliot*, 478 U.S. 788, 799 (1986)). First, the hearing officer must have acted "in a judicial capacity." *Id*. (quoting *Elliot*, 478 U.S. at 799). Second, the hearing officer must have "resolve[d] disputed issues of fact" that were properly raised before her. *Id*. Third, the party against whom preclusion is sought must "have had an adequate opportunity to litigate" the issue before the hearing officer. *Id*. And fourth, if the first three factors are met, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in" Michigan courts. *Id*. Michigan state law asks whether the prisoner "had a 'full and fair opportunity' to litigate" the issue in the prison disciplinary hearing. *Nash v. Bryce*, 157 F.4th 436, 444 (6th Cir. 2025) (quoting *Peterson*, 714 F.3d at 913).

The Sixth Circuit has held that major misconduct hearings in Michigan prisons meet the first three *Elliot* factors. *See Peterson*, 714 F.3d at 912–13; *Roberson v. Torres*, 770 F.3d 398, 403–04 (6th Cir. 2014); *Nash*, 157 F.4th at 445. As to the first factor, hearing officers act in a judicial capacity because they consider each party's "version of the facts at a formal hearing and issue a written final decision" subject to appeal. *Peterson*, 714 F.3d at 912. The second factor is also met. Here, the hearing officer resolved a disputed fact properly before her when she rejected Plaintiff's account and determined he engaged in insolent behavior towards Defendant Ward. (*See* Misconduct Hearing Rep., ECF No. 45-2, PageID.258.) So, too, is the third factor. MDOC major misconduct hearings are governed by a "plethora of statutory protections" that provided Plaintiff an adequate opportunity to litigate whether he was insolent when yelling at Defendant Ward. *Peterson*, 714 F.3d at 912–13.

The Court now turns to the fourth *Elliot* prong. Under Michigan law, a court considering whether to give preclusive effect to another tribunal's factual determination must ask (1) "whether a question of fact essential to the judgment was actually litigated and determined by

a valid and final judgment"; (2) "whether 'the parties had a full and fair opportunity to litigate the issue' " before the agency, *Nash*, 157 F.4th at 445 (quoting *Peterson*, 714 F.3d at 914); and (3) whether there is "mutuality of estoppel." *Peterson*, 714 F.3d at 914. To be "actually litigated," the "precise[ ]" fact in issue must have been "put into issue by the complaint, submitted to the trier of fact, and determined" by the same. *Id*. On the second prong, Michigan courts employ a multi-factor test that "ultimately rests on the court's sense of justice and equity." *Id*. at 914–15 (quoting *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845 n.2 (Mich. 2004)). Michigan courts make an additional inquiry when parties are seeking to preclude an issue decided by an administrative tribunal. First, they ask whether "the administrative decision was adjudicatory in nature; second, whether "there was a right to appeal from the decision; and third, whether "the legislature intended to make the decision final absent an appeal." *Id*. at 914 (citing *Nummer v. Treasury Dep't*, 533 N.W.2d 250, 253 (Mich. 1995)). For the following reasons, preclusion is merited here.

First, the precise fact in issue was resolved below. The issue of whether Plaintiff engaged in insolent behavior was "put into issue by the complaint, submitted to the [hearing officer], and determined" by the hearing officer. *Peterson*, 714 F.3d at 914. The principal factual issue at the hearing was whether Plaintiff was insolent when yelling at Defendant Ward.

Under MDOC policy, "insolence" is "[w]ords, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee." (See MDOC Policy Directive 03.03.105 Attachment B, ECF No. 45-3, PageID.284.) The hearing officer found that Plaintiff made the statement in question and that the statement was harassing and degrading to Defendant Ward. (Misconduct Hearing Rep., ECF No. 45-2, PageID.258.) Thus, the precise factual issue of whether Plaintiff made the insolent statement to Defendant Ward was resolved by the hearing officer.

Second, Plaintiff had a full and fair opportunity to litigate whether he made the statement to Defendant Ward. (*See* Misconduct Report, ECF No. 45-2, PageID.259; Misconduct Hearing Rep., ECF No. 45-2, PageID.256–58.) And third, because the same parties who litigated the issue in the hearing are the same parties to this action, there is mutuality of estoppel. With the first three state law factors satisfied, the Court turns to the agency-specific factors applied by Michigan courts.

All three factors lead to the conclusion that the ALJ's factual finding preclude Plaintiff from contending that he did not make the statement. First, that the misconduct hearing "was adjudicatory in nature" has already been established. *Peterson*, 714 F.3d at 914. Second, plaintiff had a right to appeal. See Mich. Comp. Laws § 791.255(2). And third, the Michigan legislature intended to make MDOC hearing officer's decisions in major misconduct hearings "final in the absence of appeal." *Peterson*, 714 F.3d at 917. Therefore, the Court concludes that Michigan courts would grant preclusive effect to the hearing officer's finding that Plaintiff made the insolent statement to Defendant Ward.

The only possible foundations Plaintiff offers to support his claim that the misconduct report was motivated by his protected conduct are temporal proximity or the falseness of the report. But there is no meaningful temporal proximity between Plaintiff's complaints and the January 12, 2023, misconduct report and Plaintiff is precluded from relying on the alleged falsity of the report. Put simply, under the circumstances here, no reasonable jury could find that Defendant Ward issued the misconduct ticket due to Plaintiff's complaints regarding Defendant Ward. The Court, therefore, concludes that Defendant Ward has shown that he would have taken the same action, i.e., written the misconduct ticket against Plaintiff, in the absence of the protected activity. Plaintiff has offered nothing to overcome this conclusion.

Plaintiff has failed to demonstrate that there is a genuine issue of material fact regarding Defendant Ward's retaliatory motivation for writing the insolence misconduct report. Accordingly, his First Amendment retaliation claims fails at the third step.

**Conclusion**

For the reasons set forth above, the Court will grant Defendant Ward's motion for summary judgment and enter Judgment in favor of Defendant Ward and against Plaintiff on the Plaintiff's retaliation claim relating to the January 12, 2023 misconduct report—the only remaining claim between the parties.

Dated: September 3, 2026

/s/ Jane M. Beckering
Jane M. Beckering
United States District Judge